Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| MARISOL REYNOSO FLORES; FÉLIX MARTÍN OLMO REYNOSO; LIMARÍ OLMO REYNOSO Y GELIMAR OLMO REYNOSO<br><br>PETICIONARIO<br><br>V.<br><br>SYLVIA JIMÉNEZ QUIÑONES; LUIS OLMO JIMÉNEZ; SYLVIA IVELISSE OLMO JIMÉNEZ E IDALIA OLMO JIMÉNEZ<br><br>RECURRIDOS | TA2025CE00012 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Civil Núm.: AR2020CV01534<br><br>Sobre: División, Partición y Adjudicación de Bienes Hereditarios |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard, y la jueza Prats Palerm

**Brignoni Mártir, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de agosto de 2025.

Comparecen ante nos, Marisol Reynoso Flores; Félix Martín Olmo Reynoso; Limarí Olmo Reynoso; y Gelimar Olmo Reynoso, (en adelante, en conjunto, "la parte peticionaria"). Solicitan nuestra intervención para que dejemos sin efecto la determinación emitida el 30 de abril de 2025 y notificada el 1 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Arecibo. Mediante la referida determinación, dicho foro estableció las cantidades que adeuda la parte peticionaria a la señora Sylvia Jiménez Quiñones (en lo sucesivo, "señora Jiménez Quiñones"). Concluyó, que la parte peticionaria debe pagar a la referida señora la cantidad de $33,526.89; más $8,000.00 en concepto de honorarios de abogado por temeridad, para una suma total de $41,526.89. Asimismo, determinó que dicha cifra continúa en incremento a razón de $4.49 de interés diario hasta el saldo total de la deuda. Todo, dentro de un pleito civil sobre división, partición y adjudicación de bienes hereditarios, incoado por

la parte peticionaria en contra de la señora Jiménez Quiñones y sus hijos: Luis Olmo Jiménez; Luis Orlando Olmo Jiménez; Silvia Ivelisse Olmo Jiménez; e Idalia Olmo Jiménez (en adelante, en conjunto, "los recurridos").

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* presentado. En consecuencia, *modificamos* el dictamen recurrido a los únicos efectos de corregir la tercera determinación de hechos, para establecer la cuantía exacta de los cheques abonados a favor de la señora Jiménez Quiñones. Particularmente, determinamos que en conjunto los referidos cheques suman la cantidad total de **$4,442.00** y **no de $4,400.00**, por lo que la determinación de hechos #3 debe esbozar el total de **$,4,442.00.**

**I.**

A continuación, se relatarán los hechos relevantes al asunto ante nuestra consideración. El 15 de diciembre de 2020, la parte peticionaria presentó la *"Demanda"* de epígrafe. Mediante esta, solicitó la división de la comunidad hereditaria que tuvo inicio el 22 de enero de 2019 con la muerte del causante Luis Olmo Arroyo. La parte peticionaria se compone de la cónyuge supérstite, Marisol Reynoso Flores (en adelante, "señora Reynoso Flores") y los tres (3) hijos de dicho matrimonio de apellido Olmo Reynoso. La causa de acción promovida por la referida parte se dirigió en contra de la primera esposa del causante, la señora Jiménez Quiñones y los cuatro (4) hijos del referido matrimonio de apellido Olmo Jiménez. Según lo alegado por la parte peticionaria, el causante murió testado. Dicha parte también aseveró, que, mediante el aludido testamento, el causante instituyó herederos de la legítima estricta a sus siete (7) hijos; otorgó el tercio de mejora a sus hijos de apellido Olmo Reynoso; y concedió el tercio de la libre disposición a la señora Reynoso Flores además de la cuota viudal usufructuaria.

En lo atinente, la parte peticionaria sostuvo que le adeudaba a la señora Jiménez Quiñones la cantidad principal de $30,000.00. Aseveró, que a la deuda principal se le debían deducir los dineros ya pagados y

añadir al monto total los intereses acumulados desde el 12 de abril de 1994 a razón del seis por ciento (6%) anual. No obstante, alegó que no reconoce el monto adeudado, según establecido en la *"Sentencia"* dictaminada en el caso número 2007CCD-1054. Esto, según arguyó, por ser dicha sentencia una determinación fraudulenta y nula, debido a la ausencia de una parte indispensable y de una notificación adecuada. En virtud de lo expuesto, solicitó que se declarara *Ha Lugar* la *"Demanda."*

En respuesta, el 15 de marzo de 2021, los recurridos de apellido Olmo Jiménez presentaron "*Contestación a la Demanda; Defensas Afirmativas; Reconvención."* En lo pertinente a la alegación responsiva, negaron las alegaciones principales de la *"Demanda."* De otra parte, aceptaron la fecha de fallecimiento del causante y su extinta relación matrimonial con la señora Reynoso Flores. Además, admitieron la existencia de una acreencia a favor de la señora Jiménez Quiñones. Sin embargo, adujeron que la referida obligación dineraria se fundamenta en la *"Sentencia"* dictaminada en el caso número 2007CCD-1054 del año 2008. Finalmente, peticionaron que se declarara *No Ha Lugar* la *"Demanda."*

Por su parte, el 2 de septiembre de 2021, la señora Jiménez Quiñones presentó *"Contestación a la Demanda."* Aceptó la ocurrencia de la muerte del causante en la fecha indicada en la *"Demanda"* y que éste otorgó testamento. Además, admitió la existencia de una acreencia a su favor y que la *"Sentencia"* del caso 2007CCD-1054 no fue debidamente notificada. No obstante, negó que la cantidad adeudada fuera de $30,000.00. Sostuvo en cambio, que se otorgó un pagaré hipotecario por el principal de $37,200.00, más intereses al seis por ciento (6%) anual.

En el mismo escrito, la señora Jiménez Quiñones instó reconvención. Adujo, que el 16 de abril de 1998, otorgó junto al causante una escritura de "liquidación de sociedad legal de gananciales." Aseveró que mediante esta vendió al causante su participación postganancial por la cantidad de $37,200.00, más intereses al seis por ciento (6%) anual. Sostuvo que, para satisfacer la referida deuda, en la misma fecha el

causante y la señora Reynoso Flores otorgaron una Escritura de "Hipoteca en Garantía de Pagare." En vista de ello, aseveró que al 16 de agosto de 2021 los herederos del causante le debían la cantidad de $135,895.06; más intereses; costas; gastos; y honorarios de abogado. En virtud de lo expuesto, solicitó que se venda en pública subasta el bien inmueble objeto de hipoteca para satisfacer las cantidades adeudadas.

Tras varias incidencias procesales que no son necesarias de pormenorizar, el 30 de agosto de 2022, la parte peticionaria presentó *"Moción Solicitando Sentencia Sumaria Parcial."* [1] A través de esta, peticionó que se declara la nulidad de la *"Sentencia"* del caso 2007CCD-1054 por carecer de parte indispensable. Además, solicitó que se determinara que era fraudulento el monto adeudado, según expuesto en dicha sentencia. Añadió que en la deposición tomada a la señora Jiménez Quiñones, ésta admitió que el principal de la deuda es de $30,000.00. A tenor de lo anterior, sostuvo que no había controversia en que la acreencia de la señora Jiménez Quiñones consiste en la cantidad de $30,000.00; más intereses, según se desprende de la estipulación de divorcio acordada entre la referida señora y el causante. Agregó que el causante había entregado a la referida señora dos (2) giros (32-003057189 y 31-002997891), por las cantidades de $2,220.00 y de $2,222.00, en concepto de abono al monto adeudado. Ante lo expuesto, solicitó al foro recurrido que dictara sentencia sumaria parcial.

En respuesta, el 17 de noviembre de 2022, la señora Jiménez Quiñones presentó *"Oposición a Solicitud de Sentencia Sumaria."*[2] Adujo, que existían hechos materiales en controversia que impedían la disposición

---

[1] Acompañó su solicitud con la siguiente prueba documental: *"Demanda;" "Contestación a la Demanda;" "Contestación a la Demanda; Defensas Afirmativas; Reconvención;"* Nueve (9) anejos intitulados "Copia de Deposición;" Giros Núm. 31-002997891 y Núm. 32-003057189, expedidos por el Banco Popular de Puerto Rico; *"Sentencia"* de designación alfanumérica CDI-93-1052; "Estado Financiero;" "Estipulación sobre pago de sentencia y que se haga formar parte de la querella;" Escritura Núm. 2 sobre "Liquidación de Sociedad Legal de Gananciales;" *"Demanda"* del caso 2007 CCD-1054; Escritura Núm. 3 sobre "Hipoteca en Garantía de Pagare;" "Declaración Jurada" suscrita por Marisol Reynoso Flores.

[2] Acompañó su escrito en oposición con la siguiente prueba documental: "Deposición P. 69-70;" "Deposición P. 98;" "Deposición P. 101-102;" *"Sentencia"* del caso Núm. 2007 CCD-1054; *"Orden y Resolución"* del Caso Núm. 207 CCD-1054; "Juramento" suscrito por Silvia Jiménez Quiñones.

sumaria parcial peticionada. En esencia, sostuvo que había controversia en cuanto al principal adeudado. Su postura se circunscribe a que dicho principal consiste en la cifra de $37,200.00. Aseveró, que el referido principal surge de la modificación que se efectuó a la obligación mediante "las escrituras #2 de liquidación de bienes gananciales y #3 de la hipoteca del 16 de abril de 1998." Además, esgrimió que había controversia sobre el balance total de lo adeudado y sobre la existencia y validez de facturas y su aplicabilidad a la deuda. Ante ello, peticionó que se declarara *No Ha Lugar* la *"Moción Solicitando Sentencia Sumaria Parcial."*

En atención a los escritos presentados, el 8 de agosto de 2023, el foro recurrido notificó *"Sentencia Sumaria Parcial."*[3] Mediante esta, resolvió sumariamente la cuestión litigiosa del dinero adeudado a la señora Jiménez Quiñones. Así dispuso, que a partir del 16 de abril de 1998 la acreencia de la señora Jiménez Quiñones se convirtió en el monto principal de $37,200.00, según lo pactado en la Escritura Núm. 2 sobre "Liquidación de Sociedad Legal de Gananciales." Añadió que, desde el 12 de septiembre de 1994 al 15 de abril de 1998, los intereses adeudados (6% anual) se cobrarían sobre la suma original y principal de $30,000.00. Mientras que, a partir del 16 de abril de 1998 al 14 de marzo de 2023, los intereses devengados serían sobre la suma principal de $37,200.00. Además, determinó que los cheques de $2,220.00 y de $2,222.00 se debían aplicar primordialmente al principal; y que, a partir del 15 de marzo de 2023, los intereses se habrían de computar a la cantidad principal resultante luego de abonar a la deuda principal el dinero consignado por la señora Reynoso Flores.[4]

Como parte de la *"Sentencia Sumaria Parcial,"* el foro recurrido esbozó las siguientes determinaciones de hechos:

---

[3] SUMAC 191.
[4] Surge de la Entrada Núm. 164 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) que la señora Reynoso Flores consignó la cantidad de $61,796.49 en la fecha de 14 de marzo de 2023. Dicho acto de consignación fue estipulado por las partes en el *"Informe sobre Conferencia Preliminar entre Abogados."*

1. Las partes son la viuda y los herederos de Don Luis Olmo Arroyo (causante) excepto Doña Sylvia Jiménez Quiñones que es la exesposa y acreedora del causante. Esto en cuanto al acuerdo de divorcio en el caso CDJ-93-1052, quien falleció el 22 de enero de 2019.

2. El causante y la codemandada Sylvia Jiménez Quiñones se divorciaron el 12 de abril de 1994 en el caso CDI-93-1052.

3. La codemandante Marisol Reynoso Flores y el causante contrajeron matrimonio el 12 de septiembre de 1997.

4. Los codemandados de apellidos Olmo Jiménez son herederos del causante Luis Olmo Arroyo.

5. El causante murió testado mediante escritura número 2 del 9 de enero de 2012 ante el notario Verónica Daliza Hernández Torres (anejo número 1 de la demanda).

6. Surge del testamento que el tercio de legítima estricta se dividiría entre sus siete (7) hijos de apellidos Olmo Jiménez y Olmo Reynoso demandados y demandantes respectivamente por partes iguales. El tercio de mejora lo legó a sus hijos de apellidos Olmo Reynoso el tercio de libre disposición a su esposa Marisol Reynoso Flores.

7. La codemandada Sylvia Jiménez Quiñones es acreedora de la sucesión del causante Luis Olmo Arroyo.

8. De la estipulación en el caso de divorcio surge que Luis Olmo Arroyo asumió todas las deudas de la extinta sociedad de gananciales con Sylvia Jiménez Quiñones.

9. Surge también de la misma que Luis Olmo Arroyo quedó a deber Treinta Mil dólares ($30,000.00) de sus gananciales que pagaría en dos (2) plazos anuales de Quince Mil dólares ($15,000.00) cada uno; con intereses al seis por ciento (6%) anual (anejo número 7 de la Moción de Solicitud de Sentencia Sumaria Parcial).

10. El causante nunca pagó a la codemandada Sylvia Jiménez Quiñones la suma de Treinta Mil dólares ($30,000.00) acordada en el divorcio.

11. La sentencia en el caso de cobro de dinero número 2007-CCD-1054 adolece de los defectos que enumeramos en nuestra resolución de 8 de junio de 2021.

12. Luis Olmo Arroyo entregó al Banco Popular de Puerto Rico un estado de situación con fecha del 31 de octubre de 1996; dos (2) años después de su divorcio y menos de uno (1) de contraer nupcias con la codemandante Marisol Reynoso Flores, certificado por el C.P.A. Juan A. Feliciano Charneco (anejo número 8 de la Moción de Solicitud de Sentencia Sumaria Parcial).

13. Surge de dicho estado de situación certificado por un C.P.A. que Luis Olmo Arroyo tenía deudas por Dieciséis Mil Novecientos dólares $16,900.00 nota D; Ciento Treinta y Siete Mil Ciento Sesenta y Un dólares ($137,161.00) nota E y Veinte Mil dólares ($20,000.00) nota F; para un total de Ciento Setenta y Cuatro Mil Sesenta y Un dólares ($174,061.00) y de la sentencia de divorcio que debía Treinta Mil dólares ($30,000.00) a su excónyuge (demandada) para un total de Doscientos Cuatro Mil Sesenta y Un dólares ($204,061) (véase anejos números 7, 8, 9 y 10 de la Moción de Solicitud de Sentencia Sumaria Parcial).

14. Surge de la estipulación con el Banco Popular de Puerto Rico suscrita por la demandante Marisol Reynoso Flores, la codemandada Sylvia Jiménez Quiñones y el causante Luis Olmo Arroyo que la codemandante y el causante asumieron la deuda con el Banco Popular de Puerto Rico (nota E) del estado de situación certificado (anejo número 11 de la Moción de Solicitud de Sentencia Sumaria Parcial) donde específicamente se desistió en cuanto a la codemandada que había suscrito la obligación original.

15. Posteriormente específicamente el 16 de abril de 1998 un (1) año y ocho (8) meses después del matrimonio entre el causante y la codemandante se otorgaron las escrituras dos (2) y tres (3) ante el notario Roberto Vélez Báez (abogado de la codemandada en los casos números CDI-93-1052 Divorcio y CCD-2007-1054 Cobro y Ejecución de Hipoteca contra Luis Olmo Arroyo). Adquieren e hipotecan respectivamente los bienes de los cuales el causante aún debe la obligación que contrajo en su divorcio con sus intereses al seis por ciento (6%). Y que resulte al final de este pleito.

16. Surge de la escritura número dos (2) id. que:

> "La compareciente de la primera parte Doña Sylvia Jiménez Quiñones, VENDE, CEDE Y TRASPASA todos sus derechos en el inmueble descrito en el expositivo segundo de este documento a favor de los comparecientes de la segunda parte por su condición de matrimonio, por la suma de TREINTA Y SIETE MIL DOSCIENTOS DÓLARES ($37,200.00) que incluye el principal más los intereses como parte de las estipulaciones de su petición de divorcio desde la fecha en que fue disuelta la Sociedad Legal de Gananciales hasta esta fecha, cuya suma el compareciente de la segunda parte, Don Luis Olmo Arroyo no ha satisfecho por lo que con su actual esposa constituye hipoteca en garantía de dicha suma en esta misma fecha, la que devengará intereses al seis por ciento anual (6%) hasta su total pago". (Véase anejo número 12 de la Moción de Solicitud de Sentencia Sumaria Parcial).

17. Lo que nos hace concluir que a partir del 16 de abril de 1998 la deuda a pesar de lo declarado por la codemandada Sylvia Jiménez Quiñones de que la deuda eran Treinta Mil dólares ($30,000.00) más los intereses; todos, la codemandante, la codemandada y el causante suscribieron una escritura que dice:

> "OCTAVO: Los Comparecientes se dan mutuamente eficaz carta de pago y declaran por medio de este documento, no tener nada que reclamarse como consecuencia de la liquidación de la Sociedad Legal de Gananciales disuelta a excepción de la suma de Treinta y Siete Mil Doscientos dólares ($37,200.00) antes reseñada en caso de incumplimiento por el deudor hipotecario que se constituye".

> "Los comparecientes en el carácter y representación que ostentan, aceptan la presente escritura en todas sus partes tal y como está redactada, por ser conforme a lo pactado y convenido".

> (Véase anejo número 12 de la Moción de Solicitud de Sentencia Sumaria Parcial).

18. Los giros números 32-003057189 y 31-002997789 por Dos Mil Doscientos Veintidós dólares ($2,222.00) y Dos Mil Doscientos Veinte dólares ($2,220.00) expedidos por el

Banco Popular de Puerto Rico que la codemandada admite haber recibido y cobrado se acreditarán a los intereses devengados después del 16 de abril de 1998. O sea que desde el 12 de abril de 1994 fecha de la Sentencia de Divorcio hasta el 16 de abril de 1998 fecha de la Escritura Número dos (2) en que la codemandada vende al causante y a la sociedad de gananciales compuesta con la codemandante su participación en la finca número 4340 de Barceloneta, Puerto Rico los intereses se computarán sobre Treinta Mil dólares ($30,000.00) al seis por ciento (6%) y de allí en adelante a base de Treinta y siete Mil Doscientos dólares ($37,200.00). sujeto esto a los efectos de la consignación efectuada el 14 de marzo de 2023 por la codemandante Marisol Reynoso Flores y hasta el día de su saldo. (Véase anejos números 12 y 13 de la Moción de Solicitud de Sentencia Sumaria Parcial).

19. "La co-demandante Marisol Reynoso Flores, compareció y firmó las escrituras número dos (2) y tres (3) del 16 de abril de 1998, sobre Liquidación de Sociedad de Gananciales e Hipoteca en Garantía de Pagaré respectivamente. (véase copia de la escritura marcada anejos 12 y 15)".

20. Que la codemandante Marisol Reynoso Flores era parte indispensable en el caso CCD-2007-1054 y no fue incluida como tal.

21. Los planteamientos hechos por la parte demandante en los expositivos 23,24,25 y 26 de la Moción de Solicitud de Sentencia Sumaria Parcial fueron analizados y resueltos en nuestras determinaciones números 15, 16 y 17 de esta sentencia.

Así las cosas, el 20 de febrero de 2025, la señora Jiménez Quiñones presentó *"Moción Solicitando Sentencia Sumaria y Ejecución de Sentencia Parcial."* En esencia, solicitó la ejecución de la *"Sentencia Sumaria Parcial"* notificada el 8 de agosto de 2023. Aseveró, que solo resta por establecer la cantidad actual del monto adeudado. Sobre el particular, adujo que la parte peticionaria adeuda la cantidad principal de $31,832.48; más intereses al seis por ciento (6%) anual, para un total de $35,532.03. En virtud de lo expuesto, peticionó que se ordenara el pago de lo debido y se impusieran honorarios de abogado por temeridad.

En reacción, el 12 de marzo de 2025, la parte peticionaria presentó *"Oposición a Moción Solicitando Sentencia Sumaria y Ejecución de Sentencia Parcial Regla 36.3 (b)."* Entiende, que no existe ninguna sentencia ejecutable mediante la cual se desprenda que el principal adeudado sea $31,832.48. En cambio, sostuvo que el principal debido es de $15,587.46; más $1,870.49 de intereses al 15 de marzo de 2025, para una cifra total de $17,457.95. Alegó, que la suma resultante contempla el

descuento del dinero consignado ($61,796.49); más los dos (2) cheques de $2,220.00 y de $2,222.00 que se habían abonado a la cifra adeudada. De igual modo, argumentó sobre la improcedencia de la imposición de honorarios de abogado por temeridad. Finalmente, solicitó que se declarara *No Ha Lugar* la *"Moción Solicitando Sentencia Sumaria y Ejecución de Sentencia Parcial."*

En atención a los escritos presentados, el 1 de mayo de 2025, el foro recurrido notificó la *"Sentencia Sumaria Parcial"* que hoy nos ocupa.[5] Mediante esta, estableció las cantidades que adeuda la parte peticionaria a la señora Jiménez Quiñones. En específico, determinó que luego de restar la cantidad consignada y los cheques pagados, la suma principal adeudada a la referida señora es de $26,611.15; más un interés anual de $1,597.87. Agregó que, al 14 de marzo de 2025, dichos intereses ascendían a $3,195.74, para una deuda total a esa fecha de $29,806.89. Así pues, concluyó que la parte peticionaria debe pagar a la señora Jiménez Quiñones la cantidad de $33,526.89; más $8,000.00 en concepto de honorarios de abogado por temeridad, para una suma total de $41,526.89. Estableció que dicha cuantía final continúa acumulando intereses diarios hasta el saldo total de la deuda. Finalmente, ordenó la continuación de los procedimientos en lo atinente al resto de las cuestiones litigiosas relacionadas a la división, partición y adjudicación de los bienes hereditarios en cuestión.

El foro recurrido hizo formar parte de su *"Sentencia Sumaria Parcial"* las siguientes determinaciones de hechos:

1.  La sentencia sumaria parcial emitida por este Tribunal el 8 de agosto de 2023, sentencia que es final y firme, dicta que durante el periodo de 16 de abril de 1998 hasta el 14 de marzo el principal de la deuda entre las partes era de treinta y siete mil doscientos dólares ($37,200.00) con intereses al seis (6%) por ciento. Eso significa que durante dicho término los intereses anuales equivalen a dos mil doscientos treinta y dos dólares ($2,232.00) cada año, siendo el interés diario a seis puntos veintisiete dólares ($6.27).

2.  Basada en dicha sentencia sumaria parcial que es final y firme se desprende que a la fecha del 14 de marzo de 2023 el principal de la deuda era de treinta y siete mil doscientos

---

[5] SUMAC 310.

dólares $37,200.00 y los intereses acumulados son de cincuenta y cinco mil seiscientos cuarenta y nueve dólares y sesenta y cuatro centavos ($55,649.64). Eso son 23 años ($53,568.00) y 332 días ($2,081.64).

3. Acreditando los $61,796.49 consignados por la parte demandante y los $4,400.00 que fueron pagados mediante giros 32-003057189 y 31-002997789 a los intereses y la diferencia al principal se queda para el 14 de marzo de 2023, luego de acreditados dichas cantidades un balance de principal de $26,611.15 que devenga un interés anual de $1,597.87, que al 14 de marzo de 2025 suma $3,195.74 y para el cual seguirá devengando intereses luego de dicha suma al son de $1,597.87 anuales, equivalentes a $4.49 diarios.

4. En la escritura #3 del 16 de abril de 1998 ante el notario Roberto Vélez Báez en San Juan, Puerto Rico el causante, Don Luis Olmo Arroyo y la demandante Doña Marisol Reynoso se obligaron al pago del 10% del principal de $37,200.00.

5. Dicha escritura establece $3,720.00 de honorarios de abogados en caso de reclamación, página dos, expósito TERCERO:

> "En caso de ser necesaria acción judicial para el cobre de esta obligación me someto a la competencia y jurisdicción de las cortes que elija el acreedor y pagaré además al portador la suma equivalente al diez por ciento (10%) del principal de este pagaré por la vía de la indemnización para responder de costas, gastos y honorarios de abogado, siendo dicha suma líquida y exigible en su totalidad por el mero hecho de la reclamación judicial y aunque los procedimientos se siguieren en rebeldía."

6. La demandante Marisol Reynoso Flores tiene un Certificado de Depósito en Banco Popular de Puerto Rico con número #0000100008436391 con balance de $42,000.00.

7. La demandante Marisol Reynoso Flores es albacea de la Sucesión de Don Luis Olmo Arroyo, basado en el testamento #2 otorgado por el causante el 9 de enero de 2012 ante la notario Verónica Daliza Hernández Torres y tiene bajo su custodia los activos de la sucesión.

8. La demandante Marisol Reynoso Flores no trajo bienes ni deuda al matrimonio.

9. Basado en las mociones hechas por la parte demandante y las manifestaciones de ésta en su deposición, a parte de los beneficios de Asistencia de Desempleo Pandémico (PUA), la única fuente de ingresos de Marisol Reynoso Flores es el negocio Jardín Marisol que es el mismo negocio privativo que Don Luis Olmo Arroyo trajo al matrimonio bajo el nombre Jardines Olmo.

10. Igualmente, basado en las mociones radicada por la parte demandante y las manifestaciones de ésta en su deposición los demandantes, especialmente Doña Marisol Reynoso como albacea, conocía de la deuda que le debían a la Sra. Silvia Jiménez Quiñones, siempre aceptaron la misma y a pesar de ello se han negado a pagar la totalidad de la deuda que es líquida y exigible sin justa causa.

En desacuerdo, oportunamente el 16 de mayo de 2025, la parte peticionaria presentó *"Moción Solicitando Reconsideración y Nuevas Determinaciones de Hechos."* Entre otras cosas, cuestionó el cómputo de la suma a satisfacer por la cantidad de $33,526.89; planteó objeción sobre la imposición de honorarios de abogado por temeridad; y sostuvo que la deuda es de naturaleza privativa y no ganancial. Además, informó que se allanaba a que el principal de la deuda se fijara en la cantidad de $26,611.15.

La referida moción fue declara *No Ha Lugar* por el foro recurrido mediante *"Orden"* notificada el día 19 de mayo de 2025.

En desacuerdo, el 18 de junio de 2025, la parte peticionaria presentó un recurso de *certiorari* ante este Tribunal. Mediante este esbozó los siguientes señalamientos de error:

1.  No procede la Sentencia Sumaria porque sus determinaciones no cumplen con la Regla 36.1 que expresa:

    **"… una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes…".**

    Ni la Regla 36.3(4) que establece y citamos:

    **"una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial."**

2.  No proceden los honorarios de abogado por temeridad. Nunca durante toda la tramitación de este caso que empezó extrajudicialmente en el 2019 surge la mala fe de la codemandante Marisol Reynoso Flores como es señalada en la Sentencia de 4/30/25. Versus "LA Actitud"; porque no me atrevo ponerle nombre a lo sucedido en la litigación del caso CCD2007-1054 (**Anejo** 9 que se incluye). Que su desenlace está recogido en la Orden y Resolución del 8 de junio de 2021 (**Anejo** 10 que se incluye) que declara "No Ha Lugar" la solicitud de Ejecución de Sentencia de la codemandada y que recoge el Honorable Juzgador en su Sentencia de 8 de agosto de 2023 (Páginas 2 número 11 y pagina 9 número 4; véase Anejo número 8 que se incluye Y **Anejos** número 11 y 12 Moción Solicitando Remedios expositivos 2, 15,16, 17, 20, 22, y 26 y Moción Al Expediente ambas del 7 de febrero de 2023).

3.  Por las mismas razones son incorrectas la determinación de hechos número 2 y sentencia número 2; la primera dice que $2,232.00 x 23 años son $53,568.00 y son $51,336.00; y la segunda que el interés diario es $4.49 y $1,597.07 entre 365

= $4.37, y entre 360 es $4.43, y .06% ÷ 365 días = .000164 x $26,611.15 = 4.36; otra vez incorrecto. (Véase **Anejo** 1 incluido) Aun si fuera $4.49 diarios **que no son**; tampoco sería $2,081.64; ($2,081.64 ÷ 4.49 = 463.6 días) **serían $4.49 x 332 días = $1,490.68. Y tampoco sería** $55,649.64 **sería** $52,826.68 o sea que la determinación de hechos numero 2 aunque fuera 4.49 la base que no lo es; es incorrecta. Al igual que la de sentencia número 2.

4.  También es incorrecta la determinación de hechos numero 3 porque no son $4,400.00 de los dos (2) giros; son $4,442.00 que es la suma de $2,220.00 y $2,222.00. **(Véase determinación de hechos número 18 página 4 numero 18 y conclusión de sentencia pagina 9 número 3 de la Sentencia Sumaria Parcial de 8/8/2023- Anejo 8 que se incluye), donde claramente dice $2220.00 y $2222.00 del monto de $4442.00**. Pero más grave aún es el hecho de que la Sentencia Sumaria Parcial del 8 de agosto de 2023, específicamente dispone donde se aplicaran esos $4442.00 (Ver Anejo 8 página 9 numero 3)

    "y recibidos por la codemandada Sylvia Jiménez Quiñones **se aplicarán al principal si alguno primero y luego a intereses que resultan de la ecuación del párrafo anterior**. Y el balance continuara devengando el seis por ciento (6%) hasta su pago total."

    Tengo que confesar que me percato que son conflictivas entre sí. Pero el Honorable Juzgador está en posición de decir que quiso decir; porque es un error que se debe ACLARAR.

5.  Respetuosamente entendemos que cometió error en cuanto a la determinación número seis "A" (6-A); y decimos 6A porque hay dos (2) número 6 en la Sentencia Sumaria Parcial. ¿Cómo el Honorable Tribunal concluye que es un hecho

    **"que la Albacea pospuso el pago de una deuda que devenga intereses y que es líquida y exigible?"**

6.  Mientras estudiábamos las disposiciones de la Sentencia Sumaria Parcial, específicamente pagina 4, disposiciones 5, 5, 6, 7 y 6, 7 nos llamó la atención y regresamos a las determinaciones de hechos y encontramos respetuosamente y según nuestro criterio que son erróneas las determinaciones 9 y 10 (pág. 2 en la Sentencia Sumaria Parcial; **Anejo** 1 incluido)

7.  Erró el Honorable Tribunal al imponer $8,000.00 de honorarios por temeridad; sin una sola determinación de hecho que la sustente y habiéndole concedido a la verdadera TA2025CE00012 | 18/06/2025 07:36 pm | Entrada Núm. 1 | Página 11 de 33 10 temeraria los honorarios que estipulaba el Pagaré para caso de Ejecución de Hipoteca. Que nunca lo fue y que este mismo Honorable Tribunal dejo sin efecto en su orden y resolución del caso CCD97-1054 (**Anejo** 10).

El 30 de junio de 2025, notificamos una *"Resolución,"* mediante la cual se le concedió a los recurridos un término de diez (10) días para presentar su oposición al auto de *certiorari* de epígrafe.

En cumplimiento de lo ordenado, el 10 de julio de 2025, la señora Jiménez Quiñones presentó *"Memorando de Oposición a la Expedición del Auto de Certiorari bajo la Regla 37."* En la misma fecha, los co-recurridos Olmo Jiménez, presentaron *"Moción en Cumplimiento de Orden y en Memorando en Oposición a Expedición del auto de Certiorari conforme a la Regla 37 del Reglamento del Tribunal de Apelaciones."*

Con el beneficio de la comparecencia de las partes litigantes, procedemos a esbozar el marco jurídico aplicable al asunto ante nuestra consideración.

**II.**

**A.    Recurso de *Certiorari*:**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión postsentencia de un tribunal inferior. *Rivera et al v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.* Ahora bien, el ejercicio de esta discreción no es absoluto.

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 62-63, 215 DPR ___ (2025), delimita los criterios para la expedición de un auto de *certiorari.* Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera et al v. Arcos Dorados et al,* supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023); *Rivera et al v. Arcos Dorados et al*, supra; *Torres González v.*

*Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra*, dispone los siguientes criterios:

**A.** Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

**B.** Si la situación de hechos planteada es la más indicada para el análisis del problema.

**C.** Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

**D.** Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

**E.** Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

**F.** Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

**G.** Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto." *Citibank v. ACBI*, 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde*, LLC, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Íd; Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del caso hace un análisis liviano y la determinación

resulta irrazonable. *íd.* pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**III.**

En esencia, la parte peticionaria cuestiona las cuantías esbozadas por el foro recurrido con relación a los dos (2) cheques entregados a la señora Jiménez Quiñones; el cómputo de los intereses adeudados; la imposición de honorarios de abogado por temeridad; y el cálculo de la cantidad de $33,526.89 a satisfacer por la parte peticionaria.

En oposición, los recurridos solicitan que se deniegue la expedición del auto de *certiorari.* En apretada síntesis, aseveran que la *"Sentencia Sumaria Parcial,"* notificada el 8 de agosto de 2023, es final y firme y que la señora Reynoso Flores ha retrasado el pago de la deuda que ella misma reconoció que existe.

Nótese, que la parte peticionaria recurre de una determinación postsentencia intitulada *"Sentencia Sumaria Parcial."* Previo a ello, el foro recurrido resolvió que existe una acreencia a favor de la señora Jiménez Quiñones y que la parte peticionaria tiene el deber de pagar dicha acreencia, de conformidad con la primera *"Sentencia Sumaria Parcial"* notificada el 8 de agosto de 2023. Así pues, la *"Sentencia Sumaria Parcial"* que hoy se encuentra ante nuestra consideración es una segunda determinación, cuyo efecto se ciñe a la ejecución del dictamen notificado el 8 de agosto de 2023, el cual es final y firme.

Es meritorio señalar, que la parte peticionaria admitió la existencia de la deuda en cuestión y mediante la *"Moción Solicitando Reconsideración y Nuevas Determinaciones de Hechos,"* se allanó a que el principal adeudado consiste en la cantidad de **$26,611.15,** según fue expuesto por el foro recurrido en la "*Sentencia Sumaria Parcial"* que hoy nos ocupa.

Ante tales consideraciones, determinamos al amparo de la Regla 40, *supra*, *expedir* el recurso de *certiorari* presentado por la parte peticionaria.

Esto, a los únicos efectos de clarificar el monto total de los cheques entregados a la señora Jiménez Quiñones.

Siendo así, aclaramos que la determinación de hechos #3 de la *"Sentencia Sumaria Parcial"* que hoy se revisa, debe esbozar que los dos (2) cheques entregados a la señora Jiménez Quiñones suman la cantidad total de **$4,442.00 y no de $4,400.00** como erróneamente lee la referida determinación de hechos. La cifra de **$4,442.00** es el resultado total de los dos (2) cheques entregados por las cantidades de **$2,222.00** y de **$2,220.00.** Cabe destacar, que a pesar de que la cifra total de dichos cheques no fue correctamente redactada, ello no afectó el cálculo de la cuantía principal que se adeuda. Conforme expuesto en la determinación recurrida, el principal de la deuda consistía en la cifra de $37,200.00 y los intereses ascendían a la cantidad de $55,649.64. Al sumar dichas cantidades se obtiene una deuda total de $92,849.64. Al restar el dinero consignado ($61,796.49) y el total de los cheques ($4,442.00), se obtiene correctamente el principal de **$26,611.15** expuesto en el dictamen objeto de revisión.

Tras clarificar las cuantías de los cheques, mantenemos de forma inalterada el resto de la determinación recurrida. Entiéndase por ello, que así modificada la *"Sentencia Sumaria Parcial," confirmamos* en todos sus extremos el resto del referido dictamen. De igual modo, señalamos que el asunto hoy resuelto se limita a la cuestión litigiosa de la acreencia a favor de la señora Jiménez Quiñones. Por tanto, las controversias atinentes a la liquidación de la extinta Sociedad Legal de Bienes Gananciales y la partición, división y adjudicación del caudal relicto en disputa, quedan pendientes de resolución por el foro recurrido en la vista en su fondo próximamente a celebrarse en los meses de septiembre y octubre de 2025.

**IV.**

Por los fundamentos expuestos, *expedimos* el amparo de la Regla 40, *supra,* el auto de *certiorari* presentado por la parte peticionaria. En consecuencia, *modificamos* el dictamen recurrido a los únicos efectos de

corregir la tercera determinación de hechos, para establecer la cuantía exacta de los cheques abonados a favor de la señora Jiménez Quiñones. Particularmente, determinamos que en conjunto los referidos cheques suman la cantidad total de **$4,442.00** y **no de $4,400.00**, por lo que la determinación de hechos #3 debe esbozar el total de **$4,442.00.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones